**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF**
**PENNSYLVANIA**

NORTHEAST RAPID

DISTRIBUTORS LLC,                                   :

      Plaintiff,                                        :

                                    :          23-cv-02197-JMY

      v.                                               :

THE AUTO CLUB GROUP et al.,                         :

      Defendant.                                       :

**<u>Memorandum</u>**

Younge, J.                                                    February 5th, 2024

       Currently before the Court, is a Motion to Dismiss the Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) filed by Defendant, The Auto Club Group, LLC, (hereinafter "AutoClub") (ECF No. 26.). The Court finds this motion appropriate for resolution without oral argument. See Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth below, the Court will deny this motion to dismiss.

**I.      Factual and Procedural Background[1]**

       Northeast Rapid Distribution LLC ("NERD" or "Plaintiff") is a Pennsylvania-based company that provides printing, designing, mailing, marketing, and other related services to

---

[1] The recitation facts were taken from the Amended Complaint and Affidavits supplied by the Parties. The Court makes no finding or judgment as to the veracity of the allegations contained therein.

companies engaging in mass paper mail marketing campaigns. Defendant Auto Club Group

Insurance Agency LLC ("AAA"), provides auto, property, casualty, and life insurance products,

memberships, and other goods and services." (Sec. Am. Compl. ¶ 20). Defendant Chuck H.

Fugate ("Mr. Fugate") is the Manager of Direct Mail Production for AAA, (collectively both

will be referred to as the "Defendants"). (Exhibit B, ECF No. 26). NERD alleges they provided

paper mail marketing materials promoting AAA's various business products with the hope that

they would become an authorized vendor. They further allege that AAA refused to pay agreed

upon compensation following provision of those services and never honestly considered NERD

as a potential authorized vendor.  AAA has now moved to dismiss this action saying this Court

lacks personal jurisdiction to hear this matter because AAA lacks the minimum contacts with

this forum required to subject them to legal process.

Although AAA alleges it lacks the minimum contacts with this forum required to subject

it to legal process, it has long engaged in business activities in Pennsylvania. In fact, prior to

entering into its arrangement with NERD, it contracted with a different Pennsylvania business

entity to provide the very same type of mass paper mail marketing campaign services as in the

agreement with NERD.  Prior to working with NERD, Defendants sustained a business

relationship with a company that performed similar paper mail marketing called Logan

Marketing Group, LLC, d/b/a Intellus Marketing ("Intellus") (Am Compl. Exhibit L, ECF No.

15), based in Pennsylvania. (Am Compl. ¶ 29, ECF No. 15).

Defendants entered into an agreement with Intellus on August 11, 2020 (Motion to

Dismiss, Exhibit B, ECF No. 26) to provide paper mail marketing materials.  At the time of

performance of the Intellus contract, AAA knew Intellus was a Pennsylvania-based corporate

entity because all emails communicating with Intellus employees included an electronic

signature with the address: 220 Commerce Drive, Montgomeryville, PA 18936. (*Id*. at Exhibit

B). In its contract with AAA, Intellus required pre-payment of services for printing, and mailing

services for advertisements. Accordingly, AAA paid the invoice sent by Intellus in the amount

of $900,000. In early February 2022, Manny Ortiz Sr., former Managing Partner, and CEO of

Intellus, informed AAA, that Intellus ceased operations and would no longer be able to perform

the contract services. Intellus failed to provide the promised services to AAA, yet retained the

amount paid by them. (Mot. to Dismiss, Exhibit A  ¶ 2; Ex. B ¶ 8). Thereafter, AAA sued

Intellus, and Manny Ortiz, in Michigan state court, obtaining a default judgment in the amount

of $899,251.29. (Mot. to Dismiss, ECF No. 26).

       In February 2022, Mr. Snyder, a former Intellus employee, and Manny Ortiz Sr.'s son,

Manny Ortiz Jr. ("Ortiz Jr."), formed a new company, NERD, retaining other former employees

from Intellus. (Am. Compl., ¶ 26). It was around this time, that Mr. Fugate received an email by

Manny Ortiz Sr., advising that Intellus would not be able to process any mail products and that

NERD would be able to provide the necessary services.

       Mr. Snyder reached out later that day to follow up to the email sent by Manny Ortiz Sr.

expressing NERD's eagerness to work with AAA. Similar to Intellus, NERD identified itself as

a Pennsylvania corporation, as evidenced by their new domain: "@nerdpa.com." Use of this

email address was indicative of  NERD's domicile, and further suggests continued contact by

AAA directed at a Pennsylvania-based company.

       Mr. Fugate was seeking to have NERD prepare AAA's specialty mailers for March 2022.

During this time, Plaintiff asserts they actively commenced executing specific tasks for mass

paper mail marketing, as per the Defendants' requests. All the while, NERD was under the

impression that by performing these services, they would eventually become a long-term

vendor. Mr. Fugate, continued to assure NERD of ongoing efforts to authorize them as an AAA vendor, encouraging performance based on the assurance that onboarding would be completed within a few weeks. (Am Compl. ¶ 40).

Defendant now alleges that they understood that the services with NERD would be covered by the prior contract with, and prepayment to, Intellus. (Ex. B ¶ 13). Throughout February and March, Fugate maintained this perspective as the parties exchanged different documents, and AAA contemplated the possibility of approving NERD as a vendor. (*Id.*)

The parties agreed on order details, designs, amounts, cost, etc., which NERD ultimately performed as promised. Mr. Fugate stated that NERD would be compensated for its services and indicated that AAA was in the midst of approving NERD as a vendor. (Sec. Am. Compl.). In order to adequately perform as per the understanding, Plaintiff expended resources by obtaining specific software and hiring more staff (*Id*. at ¶ 3). Following the performance, the Plaintiff discovered that they were not even being considered for a long-term contract with AAA as a vendor, nor were they likely to be compensated for the services rendered. As such, Defendants caused NERD to incur substantial financial losses as a result of relying on the representations made. (*Id*. at ¶ 4.).

On June 8, 2023, Plaintiff filed a complaint against the Defendants, alleging (Compl., ECF No. 1.) claims of breach of contract, unjust enrichment, fraud in the inducement, and negligent supervision. On July 20th, 2023, the Plaintiffs filed an Amended Complaint, wherein they modified the Defendant's corporate name (ECF No. 6). Defendants then filed a Motion to Dismiss the Amended Complaint based on a lack of personal jurisdiction (ECF No.12). On September 14th, 2023, the Plaintiff's filed their Second Amended Complaint (ECF No. 15).

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant has raised this jurisdictional defense, the burden shifts to the plaintiff to present a *prima facie* case establishing jurisdiction over the non-resident defendant in the forum. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *see also Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction."). A plaintiff has the burden to show, "with reasonable particularity," enough contact between the defendant and the forum to support the exercise of personal jurisdiction by the forum state. *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a *prima facie* case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant.").

In determining the existence of personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368. Once the plaintiff's "allegations are contradicted by an opposing affidavit . . . [he or she] must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009). To counter opposing affidavits, "[p]laintiffs may not repose upon their pleadings in this manner. Rather, they must counter defendant['s] affidavits with contrary evidence in support of purposeful availment jurisdiction." *Id*. at 559. To that end, "[t]he plaintiff must respond to the defendant's motion with 'actual proofs;' 'affidavits which parrot and do no more than restate [the] plaintiff's

allegations . . . do not end the inquiry.'" *Lionti v. Dipna, Inc.*, No. 17-1678, 2017 U.S. Dist. LEXIS 98956, at *4-5 (E.D. Pa. June 27, 2017) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, n.9 (3d Cir. 1984)); *see also Lehigh Gas Wholesale, LLC v. LAP Petro.*, LLC, No. 14-5536, 2015 U.S. Dist. LEXIS 36569, at *5 (E.D. Pa. Mar. 23, 2015) ("Plaintiff carries the burden to prove personal jurisdiction using 'affidavits or other competent evidence.'") (quoting *Metcalfe v. Renaissance Marine , Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)); *In re Chocolate Confectionary*, 602 F. Supp. 2d at 556-57 (a plaintiff must present contrary evidence in the form of "actual proofs[.]").

There are two types of personal jurisdiction recognized by Courts: specific and general. General jurisdiction is found when a corporation's "affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction is found when "the suit arises[s] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, at 571 U.S. 117, 127 (2014).

## II.    Discussion:

### A.    The Court Lacks General Jurisdiction over Claim

The question of whether general jurisdiction may be exercised turns on if the Defendant has "maintained 'continuous and systematic' contacts with the forum state." *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107 (3d Cir. 2009). The Third Circuit has used the same factors expressed by the Tenth Circuit to determine if a foreign corporation defendant has sustained continuous and systematic contacts. These factors include:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to

solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

(*Id*.) "For a corporation, general jurisdiction is only proper in states where the corporation is fairly regarded as 'at home,' which generally is restricted to the corporation's state of incorporation or the state of its principal place of business." *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022). Here, the Defendants' principal place of business is in Michigan (Second Amended Compl. ¶ 6), and as such they are not considered to be "at-home" in the state of Pennsylvania. Moreover, Defendant Mr. Fugate has alleged that his domicile is that of Plymouth, Michigan (Second Amended Compl. ¶ 7). There is no evidence demonstrating that the Defendants have actively sought business in Pennsylvania or sustained a substantial business volume in the forum state. Furthermore, in this Declaration, Mr. Fugate affirmed that under the AAA bylaws, the "Auto Club is not allowed to sell goods or services outside of its exclusive assigned territory…" (Exhibit B, Defendant's Second Motion to Dismiss, ECF No. 26). As such, the exercise of general jurisdiction over the Defendants would be improper.

**B.     The Court has Specific Jurisdiction over the Claim**

In determining if specific jurisdiction exists, the Court utilizes a three-prong test. The first prong of the test requires that the defendant "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472. The second prong of the test requires that the dispute must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414. The third prong only applies if the first two requirements have met. In this third prong, the court may consider if the exercise of jurisdiction "comports with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476.

In the realm of commercial dealings, video and telephone meetings have become more widespread. Accordingly, the Third Circuit has held that "…mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 482 (3d Cir. 1993). The Supreme Court has expanded on this point by holding, "…prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are the appropriate factors to take into consideration in analyzing minimum contacts. *Burger King*, 471 U.S. at 479. As such, a lack of physical presence in the state does not bar the exercise of personal jurisdiction over the Defendants. In *Burger King*, the Supreme Court plainly notes that when a Defendant sustains "continuing obligations" and "deliberate engagement" within a State, they have accepted the "benefits and protections" of the State, as well as the potential for litigation burdens. *Burger King*, 471 U.S. at 475-476.

In the case at hand, Defendants purposefully directed their activities at the Plaintiffs in Pennsylvania by requesting that the Plaintiffs create mass paper mail marketing material (Exhibit B, ECF No. 30). At all times, the Defendants were aware that they were dealing with a Pennsylvania-based LLC, as all relevant forms filled out for the commencement of the business relationship contained NERD's business address in Pennsylvania. (Exhibit C, ECF No. 30). The Defendant engaged in communication and correspondence with the Plaintiff concerning the specific details of the requested materials. As evidenced by the email exchanges between both Parties, wherein Defendants specifically asked for certain projects to be completed by specified deadlines (Exhibit D, ECF No. 30). In these emails, Defendants were also conscious that they were engaging with many of the same individuals as in their previous interactions with Intellus. The Parties held meetings about these projects as well, and prepared presentations were prepared

for "contemplated future consequences." (*Id.* ) Moreover, the email chain itself is an indication of communications purposefully directed toward the Plaintiff in Pennsylvania.

The cases cited by the Defendant, regarding personal jurisdiction for out-of-state supplier contracts are not applicable to the present case. The Defendant in *Mellon Bank (EAST) PSFS, N.A. v. DiVeronica Bros., Inc.* only maintained contact with the forum state as a result of the lawsuit. *Mellon Bank (EAST) PSFS, N.A. v. DiVeronica Bros., Inc*. 983 F.2d 551, 557 (3d Cir. 1993). In contrast, AAA did have contacts with the state of Pennsylvania apart from this lawsuit, during their business transactions with Intellus. Distinct from the Plaintiffs in *Bristol-Myers Squibb Co.*, where the California residents did not suffer harm in the forum state, the Plaintiff's harm in this case was centered in Pennsylvania. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 261 (2017). In *North Penn Gas Co. v. Corning Natural Gas Corp.*, the Third Circuit held "…the delivery of monies and communications into Pennsylvania by [Defendant] were more than merely consequential. Such activities lend validity to a finding of a substantial connection by [Defendant] to Pennsylvania, the forum state." *North Penn Gas Co. v. Corning Natural Gas Corp*., 897 F.2d 687, 691 (3d Cir. 1990). Similarly, the Defendants were purposefully directing their communications to the Plaintiffs located in the forum state.

To summarize, Defendants did maintain contact with a separate entity, before engaging with NERD. The alleged harm was suffered by the Plaintiffs who were clearly domiciled in Pennsylvania. Defendants' communication with Plaintiffs went beyond mere consequence; it actively prompted the performance of services.

The dispute between the Plaintiff and Defendant arose out of the business transactions between both Parties. As such, the alleged conduct establishes a causal connection with the forum state. The contacts sustained by the Defendants in this case were significant, as they

reached out to elicit marketing material from the Plaintiff. Specifically, the Plaintiffs were asked to create specialty mailers for March of 2022, which was later followed by more email exchanges regarding this task (Compl. ¶ 31, ECF No. 1). Plaintiff completed more projects for the Defendants including: "finalizing incomplete February processing, approvals, and production print files for AAA Life (life insurance division), AAA Emergency Response Service ("ERS"), and AAA RPM (protected mailing lists) and Non-RPM (AAAs in house mailing lists)…" as well as the creation of other marketing materials for the Defendants (Compl. ¶ 36, ECF No. 1). Throughout this period, as the Plaintiff produced the material, the Defendants continued to provide assurances that they were being considered for a position as a vendor and would be adequately compensated for their services. However, the Plaintiff alleges that they discovered that they were not even being considered for the role, nor were they paid for their services. Based on performance by the Plaintiff, the contact by the Defendant was substantially more than the "preliminary contact" the Defendants alleged, especially when one considers that Defendant now says it expected to receive the results of the performance by Plaintiff as compensation for the obligations of the now defunct corporation, Intellus.

Since the plaintiff has successfully established minimum contacts, the defendant bears the burden of proving that jurisdiction would be unreasonable. The Supreme Court held: "once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered alongside other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King Corp*, 471 at 476. For this analysis, Courts consider "the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and

the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477. Litigating in this forum would not deprive the Defendants of fair play or substantial justice. The Supreme Court has held that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987). As for the interest of the forum state, "Pennsylvania has a 'manifest interest in providing effective means of redress' when a foreign corporation reaches into the state and solicits its citizens." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 325 (3d Cir. 2007). As held in *O'Connor*, Defendants cannot argue that appearing in the Pennsylvania court would be an excessive burden given their absence of travel to the state. Furthermore, the Plaintiffs have an interest in being compensated for the services they provided. In applying the precedent used by the Third Circuit, this Court does not find a lack of fair play or substantial justice. The Defendants solicited services from Plaintiffs based in Pennsylvania and were clearly aware of this. Therefore, Defendants cannot claim that the obligation to appear in court would be excessive, given their awareness of engaging in transactions with Plaintiffs located in Pennsylvania. Although Defendants argue that they are owed money by the Plaintiffs as a result of a previous judgment, this meritless argument is irrelevant to the present case and its jurisdictional questions.

**Conclusion:**

For these reasons, the motion to dismiss for lack of jurisdiction will not be granted and an appropriate order will follow.